PATRICIA RIVET MURRAY, Judge.
| j This is a Civil Service Commission case. Sergeant Sterling Williams seeks review of the decision of the Civil Service Commission for the City of New Orleans (the “Commission”) dismissing his appeal and affirming the discipline imposed by the Superintendent of the New Orleans Police Department (the “NOPD”). For the reasons that follow, we affirm.
*1143 FACTUAL AND PROCEDURAL BACKGROUND
On August 16, 1981, Sergeant Williams was hired by the NOPD as a police recruit. In 1992, Sergeant Williams was promoted to his current rank of supervisor. As part of his duties as a supervisor, Sergeant Williams conducted roll call.
On September 10, 2006, a formal disciplinary investigation was initiated concerning an inappropriate comment allegedly made by Sergeant Williams during roll call regarding a female officer, Officer Carolyn Dalton. Lieutenant Williams, who was assigned to the Integrity Control Office, completed the DI-1, Initiation of Formal Disciplinary Investigation Form. According to the form, on September 5, |22006, Officer Dalton, who worked under Sergeant Williams, met with Captain Bernar-dine Kelly, Commander of the Fifth Police District. Officer Dalton informed Captain Kelly that morale was low on the Day Watch due to Sergeant Williams’ inappropriate conduct. Officer Dalton stated that Sergeant Williams had made inappropriate comments towards several female officers. She further stated that she was most offended when Sergeant Williams made reference to her body at one point and made reference to her wearing a thong during roll call in front of several co-workers. She still further stated that Sergeant Williams was continuing to discriminate against female officers when issuing assignments and that according to him the only position on the job for females is on the desk. Officer Dalton informed Captain Kelly that she was prepared to submit a grievance if the matter was not addressed.
On January 8, 2007, the Superintendent issued a disciplinary letter to Sergeant Williams. In the letter, the Superintendent summarized the investigation that was conducted by the Public Integrity Bureau (the “PIB”) and the allegations against Sergeant Williams as follows:
On an unknown date, during or shortly after the First Platoon Fifth Police District Roll Call was concluded, you made a comment regarding one of the female officers assigned to your platoon “in a thong.” The comment was unprofessional and was made in a location where it was overheard by the female officer as well as several of her co-workers. The comment caused undue embarrassment to the officer as well as the other officers who heard it said.
|sThe Superintendent found Sergeant Williams violated Rule 3, Professional Conduct [1] as well as Rule IX, Section 1 of the Rules of the Civil Service Commission for the City of New Orleans.[2] The Superintendent penalized Sergeant Williams by imposing a two-day suspension.
On April 28, 2007, a hearing was held before a hearing examiner appointed by the Commission. At the hearing, the NOPD presented the testimony of four witnesses: Lieutenant Williams, Officer Dalton, Officer Candace Harper, and Officer Kevin Williams.[3] Sergeant Williams *1144 testified on his own behalf.
Sergeant Williams admitted that in January 2006 he made a comment to Officer Dylen Pazon regarding Officer Dalton being in a thong. According to Sergeant Williams, Officer Pazon was joking with him about some money and he replied: “When you see Ms. Dalton run through here in a thong, that’s when I’ll give you some money.” Sergeant Williams testified that the comment was not made during roll call, but rather was made in a one-to-one conversation between him and Officer Pazon. Sergeant Williams indicated that he believed all the other officers had left because he had dismissed them.
Sergeant Williams further testified that Officer Dalton did not make the complaint regarding the thong comment until after she was disciplined by him. On | ¿September 1, 2006, he issued a DI-2, which is basically a counseling session, to Officer Dalton and her partner, Officer Harper, for low productivity.
Sergeant Williams called Officers Dalton and Harper in separately to be counseled. Sergeant Williams testified that Officer Harper, who was new, was confused about the DI-2, but she listened during the counseling session and signed the form. Sergeant Williams testified Officer Dalton was insubordinate during the counseling session and started yelling. Sergeant Williams testified that he allowed Officer Dalton to rant and rave and then asked her to sign the form, showing she appeared for the session. According to Sei’-geant Williams, Officer Dalton then replied, “I’m going to see to it that you are going to have something to sign real soon, too.”
Lieutenant Williams (who as discussed earlier prepared the DI-1 Initiation of a Formal Disciplinary Investigation Form) identified the DI-1 Form, which the NOPD introduced into evidence at the hearing. Lieutenant Williams testified that Officer Dalton told her the thong comment was made “sometime within the recent year, definitely, within a few months.” Lieutenant Williams acknowledged that no other female officer had filed a complaint and that Officer Dalton apparently was motivated to file the complaint as a result of the letter of counseling she had received a few days earlier.
Officer Dalton testified that Sergeant Williams commented on her wearing a thong during roll call one day. She testified that she recalled the incident occurred on Thursday because it was on a “fat day,” i.e., a day on which all the officers work; but, she did not recall the month in, or the date on, which the incident occurred. According to Officer Dalton, the incident occurred during roll call when Sergeant Williams pulled out a roll of money and Officer Pazon stated that he | ¿wanted to get some of the money. Sergeant Williams then went over and stood next to Officer Pazon and stated “Well, when you look like Ms. Dalton in a thong, then maybe you can have some of this money.”
Officer Dalton acknowledged that a period of time elapsed between the incident and when she made a complaint. Explaining the timing of the complaint, Officer Dalton testified that:
On that particular day, I had been sitting and taking notes because of things that was occurring in roll call between Sergeant Williams and myself and other females on the day watch. I had been taking notes for months. So, I continued to take notes and when I had enough evidence or enough paper trail, that’s when I went to the Captain. And in that paper trail was the statement that Sergeant Williams had made to me.
Officer Dalton acknowledged that she made the complaint regarding this incident shortly after Sergeant Williams issued a *1145 letter of counseling to her regarding low work productivity.
Officer Harper, who was Officer Dalton’s partner, testified that she recalled Sergeant Williams making an inappropriate comment during roll call to another officer, Officer Pazon. According to Officer Harper, on that occasion Sergeant Williams had some money in his hands and Officer Pazon asked him if he could give him some of his money. Sergeant Williams replied: “Well, when you look like Ms. Dalton in a thong, you can have some of this money.” Officer Harper testified that this statement was made during roll call when there were no less than ten other people present. She testified that the officers were all still sitting down for roll call when the statement was made. In response to the question of why the PIB report indicates that there were twelve platoon members interviewed and eight of them did not hear anything but she did, Officer Harper replied that she always sits in the same place for roll call: on the front row. Although she did not recall the | (¡exact date on which the incident occurred, she estimated that it occurred in early 2006. Officer Harper admitted that she never reported the statement and that she is friends with Officer Dalton.
Officer Williams testified that he recalled overhearing a conversation between Sergeant Williams and Officer Pazon in which Sergeant Williams commented on Officer Dalton in a thong. Officer Williams testified the comment was made in the roll call room, but he believed that “most of the officers had filed out of roll call and were getting ready to go on the street.” According to Officer Williams, Sergeant Williams was talking to Officer Pazon in a joking manner and the comment was not said in an offensive manner.
After reviewing the testimony and other evidence submitted, as well as the report of the hearing examiner, the Commission dismissed Sergeant Williams’ appeal, thereby affirming the two-day suspension imposed by the Superintendent.[4] This appeal by Sergeant Williams followed.
DISCUSSION
The legal standards governing this dispute are well-settled and can be summarized as follows:
• An employer cannot subject a permanent classified civil service employee to disciplinary action except for cause expressed in writing. La. Const. Art. X, § 8(A); Walters v. Dep’t. of Police, 454 So.2d 106, 112 (La.1984).
• Cause for discipline of an employee exists whenever the employee’s conduct impairs the efficiency of the public service in which the employee is engaged. Cittadino v. Dep’t of Police, 558 So.2d 1311, 1315 (La.App. 4th Cir.1990).
17* “The appointing authority is charged with the operation of his or her department and it is within his or her discretion to discipline an employee for sufficient cause.” Whitaker v. New Orleans Police Dep’t., 03-0512, p. 5 (La.App. 4 Cir. 9/17/03), 863 So.2d 572, 575.
• The employee may appeal from such a disciplinary action to the Commission. On appeal, the Commission has a duty to decide independently from the facts presented whether the appointing authority had good and lawful cause for taking the disciplinary action and, if so, whether the punishment imposed *1146 was commensurate with the infraction. Walters, 454 So.2d at 113.
• “The authority to reduce a penalty can only be exercised if there is insufficient cause.” Whitaker, 03-0512 at p. 4, 863 So.2d at 575 (citing Branighan v. Dep’t. of Police, 362 So.2d 1221, 1223 (La.App. 4 Cir.1978)). Further, a legal basis for any change in a disciplinary action can only be that sufficient cause for the action was not shown by the appointing authority. Branighan, 362 So.2d at 1221. The Commission may not merely substitute its judgment for the appointing authority’s judgment. Whitaker, 03-0512 at p. 5, 863 So.2d at 576.
• On appeal, the standard of review is established by the constitutional rule that the Commission’s decision is subject to review on any question of law or fact. La. Const, art. X, § 12. A multifaceted standard of appellate review applies. First, as in other civil matters, deference must be given to the Commission’s factual findings, which should not be disturbed unless manifestly erroneous or clearly wrong. Second, in evaluating the Commission’s determination as to whether the disciplinary action is both based on legal cause and commensurate with the infraction, the appellate court should not modify the Commission’s decision unless it is arbitrary, capricious, or characterized by an abuse of discretion. Bannister, 95-404 at p. 8, 666 So.2d at 647. Arbitrary or capricious means there is no rational basis for the action taken by the Commission. Id.
Harris v. Department of Fire, 08-0514, pp. 5-6 (La.App. 4 Cir. 7/16/08), 990 So.2d 54, 62.
Applying these principles, an appellate court must determine two factors: (1) whether the appointing authority had good or lawful cause for taking the disciplinary action, and (2) whether the punishment imposed is commensurate with the offense. Id. (citing Staehle v. Dep’t. of Police, 98-0216, p. 3 (La.App. 4 Cir. 11/18/98), 723 So.2d 1031, 1033). To establish that it had good or lawful cause the ^Department must satisfy a two-pronged burden of proof: (i) prove that the complained of conduct occurred, and (ii) prove that the conduct impaired the efficiency of the Department. Id.
In this case, the complained of conduct was Sergeant Williams making the improper thong comment regarding Officer Dalton during or shortly after roll call. It is undisputed that the complained of conduct occurred. Thus, the issue we must address is whether the NOPD proved Sergeant Williams’ conduct impaired the efficiency of the Department. Sergeant Williams argues that the NOPD failed to demonstrate that his private communication impaired the efficient and orderly operation of the public service, which he contends is demonstrated by Officer Dalton’s motivation in making a complaint coupled with her lengthy delay in making the complaint.
In finding the conduct at issue impaired the efficiency of the Department, the Commission reasoned that Sergeant Williams’ “stray comment affected his effectiveness as a supervisor.” In a concurring opinion, one of the commissioners noted that the true impairment of the efficiency of the Department in this matter is not the productivity issues cited by the Commission, but rather the clear violation of the Department’s Sexual Harassment Policy. As the concurrence points out, “the Hiring Authority is required not only to investigate such incidents, but to repudiate such conduct in order to avoid the creation of a *1147 hostile working environment for women police officers.”[5]
Based on the circumstances of this case, we agree with the Commission’s finding that the NOPD had cause for suspending Sergeant Williams. Because the 19complained of conduct constituted a violation of the Department’s Sexual Harassment Policy, it bore a real and substantial relationship to the efficient operation of the NOPD. We thus conclude that the Commission did not err in dismissing Sergeant Williams’ appeal.
DECREE
For the foregoing reasons, the ruling of the Commission is affirmed.
AFFIRMED.
LOVE, J., concurs and assigns reasons.

. Rule 3 provides:
Employees shall conduct themselves in a professional manner with the utmost concern for the dignity of the individual with whom they are interacting. Employees shall not unnecessarily inconvenience or demean any individual or otherwise act in a manner which brings discredit to the employee of the Police Department.

. Rule IX, Section I, Maintaining Standards of Service, provides:
When an employee in the classified service is unable or unwilling to perform the duties of his/her position in a satisfactory manner, or has committed any act to the prejudice of the service ... the appointing authority shall take action warranted by the circumstances to maintain the standards of effective service. The action may include ... (5) suspension without pay.

. Although at the time of the hearing Officer Williams had been promoted to sergeant, we refer to him as Officer Williams, which was his position at the time of the incident in question, in order to avoid confusion between him and the appellant, Sergeant Williams.

. The Commission's decision contains an error in stating that the Superintendent imposed a three-day suspension. Given the Commission's decision dismisses Sergeant Williams appeal and thereby affirms the Superintendent's decision and two-day sentence, this typographical error has no impact. We note it, however, so as to avoid any confusion.

. The concurrence therefore would have imposed a more severe penalty than the two-day suspension.