MAX N. TOBIAS, JR., Judge.
 

 | fin this appeal, New Orleans Police Officer Nahlisha Jones (“Jones”) seeks review of a decision of the New Orleans Civil
 
 *469
 
 Service Commission (“CSC”), denying her appeal of discipline imposed by the appointing authority, the New Orleans Police Department (“NOPD”). For the following reasons, we affirm the decision of the CSC.
 

 The NOPD employed Jones as a police officer in the Second District. Jones worked with the “A” platoon with a shift starting at 6:25 a.m. and ending at 3:00 p.m.
 

 The NOPD issued a disciplinary letter, dated 25 February 2010, to Jones asserting that she failed to promptly report to duty on time on 4 April 2009. As a result of the failure to promptly report to work, a DI-2
 
 [1]
 
 was issued, which Jones refused to sign, resulting in a second violation. A pre-disciplinary hearing was held. Ultimately, the NOPD imposed a two-day suspension.
 

 12Jones appealed to the CSC and it appointed a hearing examiner to take testimony. At the hearing, the hearing examiner noted that the basis for the disciplinary action was contained in the disciplinary letter, and reviewed the allegations regarding Jones’ unexcused absence and refusal to sign the DI-2. For identification purposes, the hearing examiner marked the disciplinary letter as “hearing examiner one” and made the disciplinary letter a part of the record.
 

 The parties stipulated that Jones arrived late to work on 4 April 2009 and that she refused to sign the DI-2 form. She testified that on 4 April 2009, she arrived at work between 7:35 a.m. and 7:45 a.m. She also testified that she contacted the desk officer, Christina Watson, to let her know she would be late, though she did not tell her how late she would be and did not provide a reason therefor. Jones stated that her supervisor, Sergeant Duralph Hayes, III (“Hayes” or “the sergeant”), contacted her to inform her that she would not need furlough for that morning and to contact Lieutenant Travis McCabe (“McCabe” or “the lieutenant”) about attending COMSTAT.
 
 [2]
 
 Jones stated that she requested Hayes to carry her on furlough for the time that she missed and that she was told to contact McCabe. She further testified that McCabe informed her that she was to attend COMSTAT on Tuesday 7 April 2009 at 3:30 p.m. Jones believed this to be an order. She stated that she advised McCabe that she was unable to attend COMSTAT on the day as she was responsible for picking up her daughter from | ^school; McCabe informed her that she would either be in attendance at COMSTAT on Tuesday or that she
 
 *470
 
 would be written up. Jones stated that she offered to attend COMSTAT on a later day, but the lieutenant refused.
 

 The next morning after roll call, Jones stated that Hayes instructed her to accompany him to a meeting with McCabe. She testified that the lieutenant informed her she was not a team player and instructed Hayes to write her up and to change her time. Hayes did write her up and but she refused to sign the DI-2. Jones explained that she refused to sign the DI-2 because no platoon policy existed that required an officer who was late to attend COMSTAT and that other officers had come in late and did not have to attend COMSTAT. Jones stated that she knew she would be issued a DI-1 for refusing to sign the DI-2, but she still chose not to sign the DI-2.
 

 Jones further testified that on 4 April 2009, she was a field training officer and was working with a recruit. She asserted that she did not set a bad example for the recruit by being late for roll call and by not signing the DI-2. She explained that she was late because she overslept due to medication which she takes for migraine headaches. She stated that she did not inform anyone why she was late because no one ever asked her why until McCabe conducted an investigation.
 

 During the course of the lieutenant’s investigation, he requested that Jones provide a statement. Jones asked for a continuance because her counsel was unable to be present. Jones stated that additional charges were brought against her based on her not giving a statement. However, Jones noted that the NOPD exonerated her of the charges based on her not giving a statement and she was not | ¿disciplined based on those charges. She retained counsel and gave a statement regarding her failure to report for duty on time on 4 April 2009 and her failure to sign the DI-2.
 

 Hayes testified that he was the supervisor of Jones on 4 April 2009 and that Jones was scheduled to report at 6:25 a.m., but did not report until 7:45 a.m. He considered that to be an excessive amount of time (one hour and twenty minutes) to be late. He explained that several options are available to an officer who is late, including informal disciplinary action (the DI-2). Further, an officer’s pay could be docked or the officer could be granted annual leave for the tardiness. He testified that McCabe would give some officers the option of going to COMSTAT to makeup the lost time when they were late.
 

 Hayes further explained that a material difference exists between being a few minutes late for roll call and being an hour and twenty minutes late. If an officer is a few minutes late, roll call is still being conducted or an officer may arrive before roll call is completed. Hayes stated that the department understands that an officer can have a family issue crop up, can have a car breakdown, or be involved in a traffic accident. On the other hand, if one is an hour and twenty minutes late, citizens are not receiving police services because the officer is not present to respond to calls for service. In the case of Jones, Hayes stated that the officer was not available to respond to service calls and therefore her recruit sat at the station with nothing to do and was not on the street like she was supposed to be, receiving training. He stated that Jones was disciplined because she was more than a few minutes late.
 

 Hayes also stated that Jones never contacted him to inform him that she would be late. He further testified that Jones did not even contact him once she | Barrived at the station on the morning of the incident. Instead, Jones picked up her recruit and went out. He stated that he contacted Jones to discuss her being late and he
 
 *471
 
 informed her to contact McCabe about attending COMSTAT. Later, Hayes issued the DI-2 and changed the payroll to reflect that Jones took annual leave for the time that she was late.
 

 McCabe testified that an officer is allowed to contact the desk officer if he or she is going to be late. However, he stated that it does not absolve the officer of the responsibility to report for duty, and only a supervisor can authorize an absence. He stated that he would handle tardiness by granting an officer the option of attending COMSTAT and not logging the officer as taking unauthorized annual leave or any other action. The lieutenant stated that he asked the sergeant to bring Jones by his detail the morning after she was late for a meeting and that he believed that it was better to get an officer to cooperate than to institute disciplinary measures. He offered Jones the option of attending COMSTAT, but Jones refused. McCabe stated that Jones never requested furlough and he did not order Jones to attend COMSTAT, but that he did offer her that option over other disciplinary measures. He testified that Jones never asked to go to COMSTAT on a different day, but merely stated that she was not going to COMSTAT. He said that he instructed the sergeant to issue a DI-2, but that Jones refused to sign it. At that point, a DI-1 was issued and an investigation ensued.
 

 McCabe stated that an officer being late impairs the efficiency of the department. He explained that during roll call, a lot of pertinent information, such as crime trends, is provided to officers and that any problems that have arisen are discussed, as well as any new policies or procedures. He stated that as a result of tardiness in the platoon, he announced, at roll call, his decision to allow officers to |fiattend COMSTAT to make-up for the time that they were tardy. He testified that an officer being late disrupts roll call and an officer being an hour and twenty minutes late sets a bad example. In the Jones’ case, the lieutenant stated that it set a bad example for the platoon as well as the recruit with whom Jones was working.
 

 Officer Shantia McCormick testified that she was the recruit that Jones was working with on 4 April 2009. She stated that Hayes contacted Jones by telephone and that Jones had requested annual leave. Officer McCormick stated that Hayes instructed Jones to contact McCabe about attending COMSTAT.
 

 The CSC found that Jones’ tardiness was unexcused and her refusal to sign the DI-2 was without justification. It found that Jones was never ordered to attend COMSTAT. The CSC found the NOPD disciplined Jones for cause and denied Jones’ appeal.
 

 As we have often explained, the CSC has authority to hear and decide disciplinary cases, which includes the authority to modify as well as reverse or affirm a penalty. La. Const, art. X, § 12;
 
 Pope v. New Orleans Police Dept.
 
 04-1888, p. 5 (La.App. 4 Cir. 4/20/05), 903 So.2d 1, 4. The appointing authority (here, the NOPD) is charged with the operation of its department, and it is within its discretion to discipline an employee for sufficient cause. The authority to reduce a penalty can only be exercised if insufficient cause exists for imposing the greater penalty.
 
 Pope,
 
 pp.5-6, 903 So.2d at 4.
 

 The appointing authority has the burden of proving by a preponderance of the evidence that the complained of activity or dereliction occurred, and that such dereliction bore a real and substantial relationship to the efficient operation of the appointing authority.
 
 Cure v. Dept. of Police,
 
 07-0166, p. 2 (La.App. 4 Cir. 8/1/07),
 
 *472
 
 964 So.2d 1093, 1094;
 
 Marziale v. Dept. of Police,
 
 06-0459, p. 10 (La.App. 4 Cir. 11/8/06), 944 So.2d 760, 767. The protection of civil Service employees is only against firing (or other discipline) without cause. La. Const, art. X, § 12;
 
 Cornelius v. Dept. of Police,
 
 07-1257, p. 8 (La.App. 4 Cir. 3/19/08), 981 So.2d 720, 724;
 
 Fihlman v. New Orleans Police Dept.,
 
 00-2360, p. 5 (La.App. 4 Cir. 10/31/01), 797 So.2d 783, 787.
 

 When a CSC decision is appealed to this court, we review the matter as to any question of law or fact, but we only review findings of fact using the manifestly erroneous/clearly wrong standard of review. La. Const, art. X, § 12;
 
 Cure,
 
 07-0166, p. 2, 964 So.2d at 1094. In determining whether any disciplinary action was based on good cause and whether the punishment is commensurate with the infraction, this court does not modify a CSC order unless it is arbitrary, capricious, or characterized by an abuse of discretion.
 
 Cure,
 
 07-0166, p. 2, 964 So.2d at 1094. A decision of the CSC is arbitrary and capricious if no rational basis exists for the action taken by the CSC.
 
 Id.,
 
 p. 2, 964 So.2d at 1095.
 

 In her sole assignment of error, Jones argues that the CSC erred in denying her appeal without considering that the NOPD violated the rights provided to her in the Police Officer Bill of Rights. She argues that she asserted her right to counsel on the day she was to provide a statement and was disciplined for not giving a statement on that day without counsel present. Further, she argues that the discipline imposed is an absolute nullity.
 

 Jones attached numerous exhibits to her appellant brief in support of her argument. The NOPD filed a motion to strike, averring that the exhibits attached to Jones’ brief were not offered, filed, and introduced into evidence during the her CSC hearing and that the argument presented therein was being raised for the first time on appeal.
 

 18Our jurisprudence recognizes that “evidence not properly and officially introduced cannot be considered, even if physically placed in the record. Documents attached to memoranda do not constitute evidence and cannot be considered as such on appeal.”
 
 Ritter v. Exxon Mobil Corp.,
 
 08-1404, p. 9 (La.App. 4 Cir. 9/9/09), 20 So.3d 540, 546. In this case, the only document that was admitted into evidence was the 25 February 2010 disciplinary letter issued to Jones. It is the only documentary evidence that we can properly consider. Accordingly, we grant the motion to strike; the exhibits attached to Jones’ brief will not be considered by us, save the disciplinary letter.
 

 An appellate court generally finds it inappropriate to consider an issue raised for the first time on appeal when that issue was not pled, urged, or addressed in the court below.
 
 Graubarth v. French Market Corp.,
 
 07-0416, p. 5 (La.App. 4 Cir. 10/24/07), 970 So.2d 660, 664. In
 
 Grau-barth,
 
 we declined to address an issue raised for the first time on appeal.
 
 Id.
 

 At the start of Jones’ hearing, the hearing examiner reviewed the disciplinary letter. Certain facts were stipulated to. Counsel for Jones indicated that whether or not Jones provided an explanation for her absence and whether or not her explanation was good or valid were at issue.
 

 The record on appeal reflects that at no time was the issue of whether or not a violation of the rights afforded Jones by the Police Officers’ Bill of Rights addressed by the hearing examiner or the CSC. Both the report of the hearing examiner and the decision of the CSC address only the issue of whether the NOPD
 
 *473
 
 proved by a preponderance of the evidence that it disciplined Officer Jones for cause.
 

 |aBy virtue of the record on appeal
 
 properly
 
 before us, we find no manifest error in the ruling of the CSC. Jones was disciplined for cause. We decline to address the issue of whether the appointing authority violated the Police Officers’ Bill of Rights as applied to Jones because it has been raised for the first time on the appeal to this court.
 

 Accordingly, for the foregoing reasons, we affirm the ruling of the CSC.
 

 MOTION GRANTED; AFFIRMED.
 

 [1]
 

 . Although not fully explained by the record on appeal, DI-2 and DI-1 appear to be forms that the NOPD uses internally relating to discipline and to commemorate and/or inform a police officer of allegations relating to misbehavior or alleged inappropriate acts or actions. DI-1 appears to be a form used to initiate a formal disciplinary investigation, whereas a DI-2 is a form used to give an officer an informal disciplinary warning advising an officer that the officer is in violation of department regulations.
 
 See Williams v. Dept. of Police,
 
 08-0465, p. 4 (La.App. 4 Cir. 10/22/08), 996 So.2d 1142, 1144.
 

 [2]
 

 . We understand COMSTAT to be a process to inform patrol officers of what is expected of them and to measure progress in the NOPD's application of a crime-fighting methodology, being a performance management approach to governing the NOPD. It apparently involves patrol officers meeting with supervisors to discuss how the police force should operate and what the appointing authority expects of and from them. It appears to be a process to warn an officer who has committed a minor infraction of the rules rather than giving an officer a DI-2, which goes on the officer’s permanent record. It is used to allow an officer to make up missed time from work without loss of compensation or vacation time.