# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## CA 15-835


**ULETOM HEWITT**

**VERSUS**

**LAFAYETTE CITY-PARISH CONSOLIDATED GOVERNMENT, ET AL.**



\*\*\*\*\*\*\*\*\*\*


APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. C-20150614
HONORABLE MARILYN CARR CASTLE, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

**BILLY HOWARD EZELL**
**JUDGE**

\*\*\*\*\*\*\*\*\*\*

Court composed of Marc T. Amy, Billy Howard Ezell, and David Kent Savoie, Judges.


**AFFIRMED.**

**C. Theodore Alpaugh, III**
**Guste, Barnett, Schlesinger, Henderson & Alpaugh, L.L.P.**
**639 Loyola Avenue, Suite 2500**
**New Orleans, LA 70113-7103**
**(504) 529-4141**
**COUNSEL FOR APPELLANT:**
    **Uletom Hewitt**

**M. Candice Hattan**
**110 E. Kaliste Saloom, Ste 101**
**Lafayette, LA 70508**
**(337) 234-0431**
**COUNSEL FOR APPELLEE:**
    **Lafayette Municipal Fire and Police Civil Service Board**

**Michael P. Corry**
**Hallie P. Coreil**
**Briney Foret Corry**
**P. O. Drawer 51367**
**Lafayette, LA 70505-1367**
**(337) 237-4070**
**COUNSEL FOR APPELLEE:**
    **Lafayette City-Parish Consolidated Government**

**EZELL, Judge.**

Uletom Hewitt appeals the decision of the trial court which upheld the Lafayette Municipal Fire and Police Civil Service Board's decision to affirm his seven-day suspension from his job as an officer with the Lafayette City Police Department. After reviewing the facts and applicable law, we affirm the ruling of the trial court.

## FACTS

In September 2010, the Lafayette City Police Department (Department) installed in-dash camera systems in the police vehicles. Uletom Hewitt, an officer with the Department since 2006, was initially trained on the operation of the camera system on September 29, 2010. The officers were given instructions on how to log onto the computers connected to the camera system and how to upload videos daily. Devon Guillory, a technical specialist with the Department, trained Mr. Hewitt. He stated that the hour-and-fifteen-minute training included use of the software, how to start and stop the camera, how to upload videos, how to classify the videos to be uploaded, and how to troubleshoot the system. He explained that there is hands-on training during this time also.

Mr. Guillory had to train Mr. Hewitt once again on November 1, 2010, because he was not uploading his videos at all. There were about twenty-nine hours of video that had not been uploaded.

On November 15, 2010, Sergeant Steve Bergeron, the supervisor who worked directly with the IT personnel, was performing a random check of videos and noted that Mr. Hewitt's videos were not classified. A classification is an explanation of the event on the video. Mr. Hewitt was also recording off-duty security like directing traffic, which is unnecessary and wastes space on the camera

storage. Sergeant Bergeron advised Lieutenant Luranie Richard of the issue, so Lieutenant Richard set up additional training for Mr. Hewitt.

On November 19, 2010, Mr. Hewitt received additional training on using the camera system from Devon Guillory. At this training session, Mr. Guillory informed Mr. Hewitt that the software has to be on at all times. Mr. Hewitt properly classified three or four videos at this training session.

Subsequently, on February 1, 2011, General Order 303.4 was issued and went into effect, which set forth the procedures officers must follow in using the in-dash camera systems. The procedures required that the officers must perform a test recording and classify it to ensure the equipment was functioning properly before the start of work. Each officer was also required to classify all recorded events after each event. Also, the officers were directed to upload their video files daily during their tour of duty. Mr. Hewitt acknowledged receipt of the General Order by his signature.

On February 25, 2011, Sergeant Bergeron performed another random check of the videos. He once again noticed that Mr. Hewitt was not classifying his videos. He also observed that the majority of Mr. Hewitt's videos were less than one minute. Sergeant Bergeron explained that, once the lights on the vehicle are turned on, the camera begins recording, with the recording actually starting thirty seconds before the lights are turned on. The fact that Mr. Hewitt's videos were less than one minute was an indication that he was circumventing the system. It was also noted that while he was uploading some of the videos, it was not on a daily basis because there were a lot of videos still stored on the in-dash camera system itself. After looking into the issue, it was determined that Mr. Hewitt was turning on the software when he logged onto his unit. When he would engage his

lights, he would manually turn off the software by holding the record button down, which shuts the camera off. The database information on Mr. Hewitt's camera indicated that he turned off the system about eighty-six times.

Mr. Hewitt claimed that his equipment was malfunctioning. The IT staff determined that his equipment was functioning properly, so they had it checked out by the outside company who did the wiring of the camera systems. That company also determined that the equipment was functioning properly. Mr. Guillory again trained Mr. Hewitt on the camera system. Mr. Hewitt was able to properly classify and upload the videos, indicating nothing wrong with Mr. Hewitt's camera system.

On February 25, 2011, Lieutenant Richard filled out an "INVESTIGATION OF POSSIBLE MISCONDUCT BY EMPLOYEE" form on Mr. Hewitt. She listed three allegations of misconduct:

> 1. Mr. Uletom Hewitt has failed to properly utilized [sic] his in-dash camera system in approximately 86 incidents. He has had remedial training on three separate occasions and after each one, Mr. Hewitt demonstrates that he can operate the equipment properly. Shortly after the training, Mr. Hewitt reverts back failing to turning [sic] on the equipment.
>
> 2. There has also been evidence that Mr. Hewitt even turns the camera system off after it has been automatically activated.
>
> 3. The equipment was checked by IT and it was determined that the camera system is working properly. Also, Mr. Hewitt has failed to upload the video files daily as mentioned in G.O. 303.4.

A "Complaint Review Form" was then submitted to Chief of Police Jim Craft who ordered an administrative shift-level investigation on March 2, 2011. Mr. Hewitt was informed by letter on March 2, 2011, of the investigation. A predetermination hearing was held on June 28, 2011. It was determined that Mr. Hewitt's actions constituted violations of General Order 303.4, and he was suspended for seven days without pay effective August 8, 2011.

Mr. Hewitt appealed his suspensions to the Lafayette Municipal Fire and Police Civil Service Board (Board).[1] Initially, the Board refused to hear the appeal while a federal lawsuit involving Mr. Hewitt was pending. In *Hewitt v. Lafayette Mun. Fire & Police Civ. Serv. Bd*, 13-1429 (La.App. 3 Cir. 6/4/14), 139 So.3d 1213, this court held that the Board's act of denying Mr. Hewitt a hearing on his appeals was an arbitrary and capricious abuse of discretion, and the trial court manifestly erred in upholding the Board's decision. We remanded the matter to the trial court directing it to issue a writ of mandamus ordering the Board to set his appeals for hearing as prayed for by Mr. Hewitt.

The hearings on Mr. Hewitt's suspensions were eventually set for December 10, 2014. On December 5, 2014, Mr. Hewitt filed a petition for a temporary restraining order (TRO), which was issued that same day. A hearing was set for December 15, 2014, on whether a preliminary injunction should be issued. The Board filed an exception based on improper service and citation because it was not notified of the TRO until December 8. The Board also filed a reconventional demand seeking costs and attorney fees pursuant to La.Code Civ.P. art. 3608.

The Board heard Mr. Hewitt's appeal of his seven-day suspension on January 14, 2015. Prior to the hearing, the Board denied a motion to recuse itself from hearing the action based on its reconventional demand. After the hearing, the Board upheld Mr. Hewitt's suspension. He then sought review of the Board's decision in the district court.

In his appeal to the district court, Mr. Hewitt complained about the same issues of which he complains in his appeal to this court. He first asserted that the

---

[1] Mr. Hewitt faced three disciplinary actions in 2011. He was first suspended on March 25, 2011, for five days. The present case involves his second suspension on August 4, 2011, for seven days. Mr. Hewitt's third disciplinary action resulted in his termination on August 30, 2011.

investigation was not completed within the time limit contemplated by La.R.S. 40:2531(B)(7), rendering the decision an absolute nullity.  He also argued that the Board should have recused itself because it was biased since it sought costs and attorney fees from him.  Finally, Mr. Hewitt argued that his actions did not deserve discipline.

The trial court upheld the Board's decision on all issues.  Mr. Hewitt then filed the present appeal to this court.

## ABSOLUTE NULLITY

Mr. Hewitt first claims that the decision of the Board must be reversed because the investigation of him was not completed within the time mandated by La.R.S. 40:2531(B)(7).  Louisiana Revised Statutes 40:2531(B)(7) provides for the time to complete an investigation as follows:

> When a formal, written complaint is made against any police employee or law enforcement officer, the superintendent of state police or the chief of police or his authorized representative shall initiate an investigation within fourteen days of the date the complaint is made. Except as otherwise provided in this Paragraph, each investigation of a police employee or law enforcement officer which is conducted under the provisions of this Chapter shall be completed within sixty days. However, in each municipality which is subject to a Municipal Fire and Police Civil Service law, the municipal police department may petition the Municipal Fire and Police Civil Service Board for an extension of the time within which to complete the investigation. The board shall set the matter for hearing and shall provide notice of the hearing to the police employee or law enforcement officer who is under investigation. The police employee or law enforcement officer who is under investigation shall have the right to attend the hearing and to present evidence and arguments against the extension. If the board finds that the municipal police department has shown good cause for the granting of an extension of time within which to complete the investigation, the board shall grant an extension of up to sixty days. Nothing contained in this Paragraph shall be construed to prohibit the police employee or law enforcement officer under investigation and the appointing authority from entering into a written agreement extending the investigation for up to an additional sixty days. The investigation shall be considered complete upon notice to the police employee or law enforcement officer under

5

investigation of a pre-disciplinary hearing or a determination of an unfounded or unsustained complaint. Nothing in this Paragraph shall limit any investigation of alleged criminal activity.

Mr. Hewitt argues that the investigation should have been completed within 120 days when it actually was not completed until 122 days after it was started. A sixty-day extension had been granted to complete the investigation, thereby giving the Department 120 days total to complete the investigation.

Louisiana Revised Statutes 40:2531(C) provides that no action is to be taken against a police officer unless the investigation is conducted in accordance with the minimum standards set forth in La.R.S. 40:2531 and failure to comply with those minimum standards renders the action an absolute nullity.

Reviewing the evidence in the record, the form entitled "INVESTIGATION OF POSSIBLE MISCONDUCT BY EMPLOYEE" was filed on February 25, 2011. Mr. Hewitt argues that the filing of this form was the start of the investigation. Mr. Hewitt claims that the form in this case is similar to the "DI-1" form that the New Orleans Police Department uses to initiate an investigation.

> DI forms appear to be documents that the NOPD uses internally relating to discipline and to commemorate and/or inform a police officer of allegations relating to misbehavior or alleged inappropriate acts or actions. *See Jones v. Department of Police*, 11–0571, p. 1 (La.App. 4 Cir. 8/24/11), 72 So.3d 467, 469 n. 1, citing *Williams v. Dept. of Police*, 08–0465, p. 4 (La.App. 4 Cir. 10/22/08), 996 So.2d 1142, 1144. A DI–2 form is "used to give an officer an informal disciplinary warning advising an officer that the officer is in violation of department regulations." *Id*. A DI–1 form, which was issued to Mr. Young, is "used to initiate a formal disciplinary investigation". *Id*.

*Young v. Dep't of Police*, 13-1596, p. 2 (La.App. 4 Cir. 6/25/14), 152 So.3d 193, 194, fn. 2, *writ denied*, 15-201 (La. 4/17/15), 168 So.3d 400.

First, there is no example of the DI-1 form in any of the cases. Secondly, we find that the form used in the present case is actually the formal, written complaint

6

contemplated by La.R.S. 40:2531(B)(7). Lieutenant Richard filled out this form which listed the witnesses and details of the allegations against Mr. Hewitt on February 25, 2011, which is the same date that Sergeant Bergeron performed the random check of the videos in finding that Mr. Hewitt was not complying with General Order 303.4. She also filled out an additional form requesting video from Mr. Hewitt's in-dash camera on that same date. No complaint had been issued prior to this date.

On March 2, 2011, Sergeant Keith Gremillion, with the internal affairs division, submitted a "Complaint Review Form" to Chief of Police Jim Craft. Chief Craft checked the box next to "Administrative Shift-Level Investigation" as the directive he chose to pursue. On that same day, written notice of the investigation was prepared and sent to Mr. Hewitt.

On March 3, 2011, Sergeant Gremillion sent notice and instructions to Major Jackie Alford that "Chief of Police James Craft has ordered a shift-level administrative investigation relevant to a complaint filed by Lt. Luraine Richard." He also informed Major Alford that the investigation must be completed within sixty days and that "[t]he starting date for this investigation is 3/2/2011." This is the same date that Chief Craft ordered the investigation.

Louisiana Revised Statutes 40:2531(B)(7) provides that a formal and written complaint must be made against a police officer before an investigation is initiated. This is the form Lieutenant Richard first completed. Then, only the superintendent of the state police or the chief of police or his authorized representative can initiate the actual investigation within fourteen days of the complaint. This is the form signed by Chief Craft March 2, 2011. We find that this is the date on which the investigation was initiated. The record indicates that Lieutenant Kim Gates

conducted the actual investigation. On June 27, 2011, notice was given to Mr. Hewitt that a predetermination hearing was scheduled for June 28, 2011, marking the end of the investigation. Therefore, the investigation was completed in 119 days, within the 120-day time period that the investigation had to be completed. The trial court was correct in determining that the investigation was completed timely.

## RECUSAL OF THE BOARD

Mr. Hewitt contends that the Board erred in refusing to recuse itself from hearing all appeals he filed. Mr. Hewitt claims that the Board's response to the TRO in filing a reconventional demand for costs and attorney fees established that the Board was biased and/or prejudiced against him and his counsel.

Pursuant to La.R.S. 33:2501(E)(3), a court cannot overturn a decision of the Board which was made in good faith for cause. *Moore v. Ware*, 01-3341 (La. 2/25/03), 839 So.2d 940. "Good faith does not occur if the appointing authority acted arbitrarily or capriciously, or as the result of prejudice or political expediency." *Id.* at 945. "Arbitrary or capricious means the lack of a rational basis for the action taken." *Id.* at 946.

In *Sampite v. Natchitoches Fire and Police Civ. Serv. Bd.*, 426 So.2d 729 (La.App. 3 Cir. 1983), the district court found that a civil service board member should have been recused, and, therefore, the action of the board was null and void because a quorum was not present. Based on La.R.S 33:2501, this court held that a district court's authority to review a civil service board's refusal to recuse a member is limited to the statutory standard of whether the decision was made in good faith for cause. We found nothing in the record to support that the board

8

member would have been prejudiced in his findings and reversed the decision of the district court which found that the board member should have been recused.

We agree with the Board that Mr. Hewitt sued it and forced it to defend itself when he asked for the TRO. The fact of such a defense does not make it biased against Mr. Hewitt.

Furthermore, we find no evidence to suggest bias or prejudice at the hearing on the motion to recuse on January 14, 2015. The Board members agreed that they were not seeking money personally from Mr. Hewitt, so there was no personal bias toward Mr. Hewitt. We find no evidence in the record that the Board was prejudiced, consequently the trial court was correct in finding that the decision of the Board in denying the recusal request was made in good faith for cause.

## DECISION OF THE BOARD

Mr. Hewitt also argues that the evidence was insufficient to warrant discipline. He contends that he should not be disciplined for issues with a new in-dash camera system and new procedures and that he was following orders when he shut off his camera system. He also contends that he had equipment problems with his camera system.

> "Legal cause for disciplinary action exists if the facts found by the commission disclose that the conduct of the employee impairs the efficiency of the public service." *Leggett v. Nw. State Coll.*, 242 La. 927, [938,] 140 So.2d 5, 9 (1962). A real and substantial relationship must be maintained "between the conduct of the employee and the efficient operation of the public service; otherwise legal cause" fails to exist and "any disciplinary action by the commission is arbitrary and capricious." *Id*. at 10. The action taken by the appointing authority "must be set aside if it was not taken 'for cause,' even though it may have been taken in good faith." *Martin* [*v. City of St. Martinville*], 321 So.2d [532,] at 535 [(La.App. 3 Cir. 1975)].

*Townsend v. City of Leesville*, 14-923, p. 2 (La.App. 3 Cir. 2/4/15), 158 So.3d 263, 266, *writ denied*, 15-703 (La. 6/1/15), 171 So.3d 263.

9

Regarding the appointing authority's burden of proof and review of the Board's determination, this court further stated:

> "The [a]ppointing [a]uthority has the burden of proving by a preponderance of the evidence the occurrence of the complained of activity and that the conduct complained of impaired the efficiency of the public service." *Fernandez v. New Orleans Fire Dep't*, 01–436, p. 4 (La.App. 4 Cir. 2/6/02), 809 So.2d 1163, 1165. A classified employee has a property right in his employment which he cannot be deprived of without legal cause and due process. *Moore v. Ware*, 01–3341 (La.2/25/03), 839 So.2d 940. The trial court accords deference to a civil service board's factual conclusions which should not be overturned unless they are manifestly erroneous. *Shields*, 579 So.2d 961. Likewise, the intermediate appellate court and our review of a civil service board's factual findings are limited. *Id*. Those findings, which are entitled to the same weight as the trial court's factual findings, cannot be overturned in the absence of manifest error. *Id*.

*Id*. at 267 (alterations in original).

At the hearing before the Board, the Board heard testimony from Lieutenant Kim Gates, who conducted the investigation, that there were eighty-six instances in which Mr. Hewitt failed to properly utilize the camera which included failing to check his camera at the start of work daily to ensure it was functioning properly, failing to classify the videos, and failing to upload the videos daily. The Board also heard extensive testimony on the fact that Mr. Hewitt was turning his camera off after it automatically started recording when the blue lights on his car were turned on.

Mr. Hewitt did testify that he could not leave his car idling while he uploaded the videos because had been told it would waste gas. He explained that this caused the camera system to overheat, and it would shut off, requiring him to start the uploading process all over again. However, Mr. Guillory explained to the Board that he retrained Mr. Hewitt on three additional occasions after the initial training and experienced no problems with the equipment. Mr. Hewitt was able to

10

successfully complete all required actions. Furthermore, Mr. Guillory checked out the equipment and found no problems and could not recreate the issues complained of by Mr. Hewitt. The unit was even sent back to the business that installed the camera system, and it found no problems either.

Sergeant Bergeron testified that other officers had problems with the system but not to the level that Mr. Hewitt experienced. Soon after each training session, Mr. Hewitt would continue not following protocol. Chief Craft testified that the number of occurrences were too many and no problems had been found with Mr. Hewitt's equipment. As Chief Craft explained in his letter to Officer Hewitt with the results of the investigation, Mr. Hewitt's failure to comply with the Department's general orders placed the Department in a "very precarious situation." Chief Craft further explained:

> In the event [there is] a citizen involved in a call which you worked, there may not be video evidence to support your actions as a law enforcement officer. In addition, you have placed yourself in jeopardy in the event a citizen files a complaint of unprofessional conduct or excessive force against you wherein there may not be video evidence to support your actions or disprove the complaint.

Based on the evidence, we find no error in the Board's decision to uphold Mr. Hewitt's seven-day suspension. Even after several efforts of retraining, Mr. Hewitt would not properly follow the protocol pertaining to his in-dash camera system, which is not only for his protection but the protection of the citizens. The Board did not act arbitrarily or capriciously, or as the result of prejudice.

## CONCLUSION

For the foregoing reasons, we find that the investigation of Mr. Hewitt was conducted in a timely manner by the Lafayette City Police Department. We also find the Lafayette Municipal Fire and Police Civil Service Board acted in good

11

faith and with statutory cause in failing to recuse itself in this matter and in finding that there was sufficient evidence to suspend Mr. Hewitt for seven days. All costs of this appeal are assessed to Uletom Hewitt.

**AFFIRMED.**