| LORA JOHNSON | * | NO. 2025-CA-0560 |
|---|---|---|
| VERSUS | * | |
| | | COURT OF APPEAL |
| CITY COUNCIL | * | |
| | | FOURTH CIRCUIT |
| | * | |
| | | STATE OF LOUISIANA |

* * * * * * *

APPEAL FROM
CITY CIVIL SERVICE COMMISSION ORLEANS
NO. 9607
Honorable Jay Alan Ginsberg, Hearing Officer
* * * * * *
**Chief Judge Roland L. Belsome**
* * * * * *

(Court composed of Chief Judge Roland L. Belsome, Judge Joy Cossich Lobrano, Judge Rosemary Ledet)

**LOBRANO, J., CONCURS IN THE RESULT**

Brett J. Prendergast
4603 South Carrollton Avenue
New Orleans, LA 70119

     COUNSEL FOR PLAINTIFF/APPELLEE

William R. H. Goforth
Max V. Camp
Charline K. Gipson
1300 Perdido Street
Room 5E03
New Orleans, LA 70112

     COUNSEL FOR DEFENDANT/APPELLANT

                          **AFFIRMED**
                         **March 30, 2026**

In this case, the New Orleans City Council ("the Council") appeals the reinstatement of an employee after the employee was terminated for alleged misconduct. Lora Johnson ("Appellee") was an employee of the Council for 35 years before she was terminated for cause. During her employment she received excellent work reviews and was granted "permanent status" as the Clerk of Council for the New Orleans City Council. However, multiple employees came forward saying that Appellee had touched them on the buttocks and made inappropriate comments at work in violation of the City's zero tolerance policy for unwanted touching. After a pre-termination hearing, the Council terminated Appellee's employment. She appealed to the Civil Service Commission ("the Commission") and was reinstated to her position. In this appeal, the Council seeks a reversal of the Commission's order reinstating Appellee. For reasons that follow, we affirm the Commission's decision.

**Facts**

*Investigation and Procedure*

In 2023, Ms. Anita Bernard ("Ms. Bernard"), an employee of the Council, was speaking to Calvin Aguillare ("Mr. Aguillare") in his office doorway. Ms.

Bernard felt a "hand up the spine of [her] back," and immediately turned around to say "don't do that." When Ms. Bernard turned she saw that it was Appellee. Ms. Bernard did not work directly under Appellee, but their respective offices collaborated frequently.

On July 7, 2023, Ms. Bernard filed a Sexual Harassment and Discrimination complaint alleging that Appellee had touched her inappropriately. Paul Harang, ("Mr. Harang"), who was Chief of Staff at that time, received the complaint. On July 17, 2023, Mr. Harang advised Councilmembers J. P. Morrell and Helena Moreno of the complaint and investigation. Over the following months, Mr. Harang proceeded to interview Anita Bernard and other alleged victims and witnesses who came to light through his investigation. On December 5, 2023, Mr. Harang sent Appellee an email advising her of the complaint and ongoing investigation. The next day, Mr. Harang interviewed Appellee and other members of staff.

On April 19, 2024, Appellee received a Notice of Pre-Termination Hearing that would take place on April 26, 2024. The Notice described the alleged incidents as taking place, "[b]etween 2016 and 2018" and "[d]uring the second quarter of 2023." It also named the three alleged victims: Ms. Bernard, Angela Sarker ("Ms. Sarker"), and Tiffany Domino ("Ms. Domino"). Approximately a week after the hearing, Appellee received a Notice of Termination via email advising that she was formally dismissed effective at of the end of day. On May 9, 2024, Appellee filed her appeal to the Civil Service Commission. The matter was then set for hearing on September 9, 2024.

At the hearing, the Commission heard testimony from Ms. Domino, Ms. Sarker, Ms. Bernard, Appellee, and Demetris Barrow ("Ms. Barrow"), among

2

others. The hearing officer submitted his report on January 22, 2025, stating that the Council did not have "just cause" to terminate Appellee and recommended Appellee's reinstatement. The Commission issued its order on April 14, 2025, reinstating Appellee "with backpay and all emoluments of employment from May 2, 2024, to present." The Commission based its decision on the fact that the Council did not meet its burden of proof showing that the conduct impaired the efficiency of public service.

### *Employee allegations*

Ms. Bernard submitted a formal written complaint that Appellee had rubbed her hand upward along Ms. Bernard's spine from the middle of her back. Ms. Bernard testified that she did not consider the touching to be sexual harassment. She explained that for various reasons, she does not like to be touched. The incident occurred in 2023 while Ms. Bernard was standing in the doorway of her supervisor's office. She immediately turned around and told Appellee, "don't do that." Ms. Bernard testified that she quickly ended the conversation with her supervisor and went back to her office "disgusted."

Naomi Mark worked in the Clerk of Council office for 23 years over a 25-year period of employment by the City. She testified that Appellee was following her as she was walking to her office, when Appellee "popped me on my behind." Ms. Mark could not remember the date on which the incident occurred but recalled that it was before Appellee became Clerk of Council.[1] Ms. Mark also testified that Appellee made inappropriate remarks. She recalled a number of occasions on which Appellee called employees "sexy, sexy, sexy," on "dress-down days." On other days, employees were required to wear uniforms. Ms. Mark also testified

---

[1] The record indicates that Appellee became Clerk of Council in 2013.

about a conversation in which Appellee engaged in a monologue comparing her own "backside" to that of others in the office. Ms. Mark never filed a formal complaint about this incident, but she revealed these details in interviews with Mr. Harang when he invited her to share her experiences with Appellee. Mr. Harang gave Ms. Mark a Sexual Discrimination and Harassment complaint form at the end of their interview. She told Mr. Harang that she would "think about it," but a formal complaint was never filed.

In 2016, Ms. Sarker worked in the front office of the Clerk of Council. While Ms. Sarker was discussing documents with her co-worker, Ms. Domino, Appellee entered the office. While they were all talking, Appellee "look[ed] over" at the documents and Ms. Sarker then felt a graze on her buttocks. Ms. Sarker testified that she initially believed this to be done by accident.

On another occasion, Ms. Sarker was at the office copy machine when Appellee walked by. As Appellee passed her, she felt another graze on her buttocks. Ms. Sarker chose not to file a formal complaint regarding these incidents. However, after a distressing conversation with Appellee, Ms. Sarker went to Mr. Harang in order to vent her frustrations. In the conversation with Mr. Harang, Ms. Sarker revealed the previous touching incidences. According to Ms. Sarker, Mr. Harang told her he had to report it, but a formal complaint was never filed.

The first incident involving Appellee and Ms. Domino occurred in 2016. Ms. Domino was leaving the office kitchen and Appellee was entering, Ms. Domino felt Appellee's "full hand" touch her buttocks. In her testimony, she described it as a "weird touch" and that it was "not a normal touch, as if someone was bumping." However, she decided not to file a complaint as she thought she might be mistaken.

4

Approximately five months later, Ms. Domino was speaking to a co-worker when Appellee came by to compliment Ms. Domino's new braids. Appellee proceeded to run her hands through Ms. Domino's braids and down her back and then touched her buttocks. Ms. Domino testified that this second incident "confirmed that she actually touched [her] on [the] butt." However, she decided again not to report it as she "thought nothing was going to be done."

The third incident occurred in 2017 when Ms. Domino was preparing some documents, and Appellee walked by and placed "her full palm on [Ms. Domino's] butt." This time, the touch was witnessed by Ms. Barrow, who was one of Ms. Domino's co-workers. Ms. Barrow also heard Appellee say something like, "ooooh," which she recalled as being "uncomfortable and inappropriate."

At that point Ms. Domino froze and locked eyes with Ms. Barrow. Ms. Domino had previously confided in Ms. Barrow regarding past incidents. After Ms. Barrow witnessed this incident she told Ms. Domino that she should "say something…" Ms. Barrow, testified that Ms. Domino "just said she needed to get out of the [Clerk of Council] office." After that, Ms. Domino began working at the Council Utility Regulatory Office.

After leaving the Clerk of Council's office, on February 14, 2019, Ms. Domino was in Council Chambers after a meeting when Appellee came up to her from behind and placed a "full palm touch on [Ms. Domino's] butt." In the moment, once again, Ms. Domino froze. According to Ms. Domino's testimony, Greg Malveaux witnessed this and came up to Ms. Domino to ask if she was okay. Ms. Domino then "stormed out" and went to her office to cry.

***Inappropriate Language***

5

The Commission heard testimony that Appellee discussed inappropriate topics and used inappropriate language while working as the Clerk of Council. Ms. Mark, as well as other former employees, claim that Appellee would use the phrase "sexy, sexy, sexy" and variations of it when talking about employees on dress-down days, which occurred every Friday. Additionally, there were a few instances when Appellee compared the size and shape of her buttocks to those of her employees. In her testimony, Appellee explained that this came up when she was describing why her skirt kept shifting during the work day compared to her employees.

### Assignments of Error

The Council makes four assignments of error: (1) the Commission failed to make any factual findings regarding the misconduct; (2) the Commission committed error by failing to find that Appellee engaged the misconduct; (3) the Commission erred by finding the conduct and language was not lawful cause for disciplinary action; (4) the Commission erred by failing to find that Appellee's termination was within City Council's discretion.

### Standard of Review

Government employees that have been granted "permanent status" must only be "disciplined… for cause expressed in writing." La. Const., Art. X, § 8(A).'" *Whitaker* v. *New Orleans Police Dep't,* 2003-0512, p. 4 (La. App. 4 Cir. 9/17/03), 863 So. 2d 572, 575 (quoting *Stevens v. Dep't of Police,* 2000-1682, p. 5 (La. App. 4 Cir. 5/9/01), 789 So. 2d 622, 625). The "for cause" standard "exists whenever an employee's conduct impairs the efficiency of the public service in which the employee is engaged.'" *Id.*

The State Constitution affords city employees the right to seek an appeal with the Civil Service Commission after the Appointing Authority invokes discipline. La. Const. art. X, § 12. This Court may then review the Commission's findings of fact under a "clearly wrong or manifest error standard." *Plains v. Sewerage & Water Bd.*, 2021-0086, p. 5 (La. App. 4 Cir. 12/15/21), 366 So. 3d 193, 196. (citing La. Const. art. X, § 12; *Doyle v. Sewerage & Water Bd.*, 2017-0928, p. 3 (La. App. 4 Cir. 5/16/18), 247 So. 3d 806, 809). The decision of the Commission should only be modified if it is "arbitrary, capricious, or characterized by an abuse of discretion." *Id.*, 2021-0086, p. 5, 366 So. 3d at 197.

### Discussion

#### Problematic Investigation

This Court finds the internal investigation of Ms. Johnson to be problematic as it substantially deviated from policy. Ms. Bernard's complaint, the one that initiated the investigation, was filed on July 7, 2023. According to CAO Policy, "[t]he Appointing Authority shall*, as soon as practically possible*, notify (in-person and in writing (by certified mail) the alleged harasser that he or she has been named in a harassment complaint and that an investigation is being conducted." CAO No. 141(R) (emphasis added). However, Appellee was not notified about the complaint or the ongoing investigation until December 5, 2023, when she received an email that she was going to have an interview with Mr. Harang concerning the allegations. Further, the policy states, "it shall be the city's objective to *complete all investigations within 60 days…* [a]n extension beyond 60 days will require a written request…" CAO No. 141(R) (emphasis added). However, there is no written request included in the record in order to explain why the investigation went beyond the allotted time. During the first 5 months of the

7

investigation, Mr. Harang conducted multiple interviews with alleged victims and witnesses without notifying Ms. Johnson. These actions fall short of the CAO policy.

Additionally, other than Ms. Bernard's complaint, none of the alleged incidents were memorialized as formal complaints as the policy requires. The CAO Policy clearly states that a "sexual harassment complaint may be oral… initially but *must* be followed by a sexual harassment or discrimination complaint form." CAO No. 141(R) (emphasis added). Mr. Harang was required to develop formal complaints as he discovered more potential victims so that there would be a detailed record of events available to all interested parties.

The record discloses no reason for Mr. Harang's five-month delay in notifying the Appellee of the allegations. Mr. Harang did not testify before the Commission.

### *Notice of Termination and Determination of Facts*

It is clear that Mr. Harang did not conduct this investigation with the proper diligence required by the CAO Policy. However, the Commission found that the Notice of Termination, itself, was not "insufficient" as a matter of law. Furthermore, the Appellant argues that the Commission "committed manifest error by failing to find that Johnson engaged in at least six instances of intentional, unwelcome touching…" However, in its April 14 decision reinstating Appellee, the Commission clearly states that "the City Council has carried its burden of showing that Appellee engaged in instances of inappropriate behavior over an 11-year period." The Commission found that City Council failed to meet its burden of proof that Appellee was terminated for just cause. This Court disagrees with this finding.  The record supports a factual finding of just cause for the termination,

8

however, it is the opinion of the Court that City Council failed to follow mandatory provisions of administrative procedure.

### *Termination for "Just Cause"*

In its decision, the Commission determined that the City Council failed to meet their burden to prove Appellee's conduct "impaired the efficiency of public service…"[2] The Commission relies on Mr. Harang's "exceeds expectation" rating of the Appellee after he conducted the investigation. However, the jurisprudence of this Court points to another method of determination.

In *Williams v. Dep't of Police*, 2008-0465 (La. App. 4 Cir. 10/22/08), 996 So. 2d 1142, this Court determined that an employee violation of the Department's Sexual Harassment Policy is sufficient, alone, to qualify as a "true impairment of the efficiency of the Department…"[3] *Id.* at 1146. In that case, an NOPD Sergeant made a "stray comment" about one of his deputies wearing a thong for money. The Court concluded that the comment warranted a two-day suspension. Additionally, this Court stated the "Hiring Authority is *required* not only to investigate such incidents, but to repudiate such conduct in order to avoid the creation of a hostile working environment…" *Id.* at 1146-47 (quoting concurrence of Commission's opinion).

Here, the Appellee's conduct clearly violated CAO governing policy. The policy states that "brushing the body," can "constitute sexual harassment…" Further, the policy explains, "some sexual harassment is subtle and varies depending on interpretation and perception." This policy was clearly written to

---

[2] Commission cites: *Gast v. Dep't of Police,* 2013-0781, p. 3 (La. App. 4 Cir. 3/13/14), 137 So. 3d 731, 733 (quoting *Cure v. Dep't of Police,* 2007-0166, p. 2 (La. App. 4 Cir. 8/1/07), 964 So. 2d 1093, 1094).

[3] Here, the Court is paraphrasing a concurring opinion in the Commission's decision.

include instances such as the ones found in this case. Indeed, the Commission found that the City Council did prove that these instances occurred, and therefore Appellee violated the City's policy.

At the September hearings, there was some concern that the current sexual harassment policy, being updated as late as 2021, was implemented after some of the alleged events took place. However, the policy is based on Ordinance Number 27795 M.C.S. which was passed on June 7, 2018, and includes "brushing" as a touching that could constitute sexual harassment. Therefore, a significant portion of the alleged allegations occurred after the passing of this ordinance.

### Conclusion

The fact that only one of the complaints was properly filed combined with the lack of timely notice to Appellee calls this investigation into question, and it is too much for this Court to ignore. Failure to follow mandatory procedures runs a risk that an accused employee will be deprived due process of law and that victims' allegations of harassment may not be handled in a manner consistent with the dignity and importance they deserve.

### Decree

Considering the above and foregoing, we affirm the result of the Commission's hearing insofar as it returns Appellee to her position of employment based solely on City Council's failure to follow mandatory procedure regarding investigation and employee discipline.

**AFFIRMED**